Royal Drug Company, Inc., Appellant, v. Jacob Levin, Appellee.

Gen. No. 37,020.

Opinion filed January 15, 1934.

HERMAN S. WALDSTEIN, for appellant; A. N. LUSTIG, of counsel.

BENJAMIN S. LEISER, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

This is an appeal by plaintiff from an adverse judgment in a suit upon a promissory note tried by the court; the note was made by defendant to the order of the plaintiff with power of attorney to confess judgment, which was entered June 27, 1932, by confession, in the sum of $1,757.50; thereafter, on motion of defendant, leave was given to defend; the affidavit supporting his motion was ordered to stand as the affidavit of merits.

Defendant alleges that he was not indebted to plaintiff at the time he executed and delivered the note in question, and that it was executed and delivered purely for accommodation. When the case was called for trial defendant moved to file an amended affidavit of merits, which was allowed; this alleged the same defense, but added "that the entire transaction by the plaintiff was unauthorized by its corporate charter and null and void." The trial court held with this defense of ultra vires, vacated the judgment and entered a finding and judgment against the plaintiff.

In this court the defendant in his brief rests his case solely upon the plaintiff's charter and the decisions in *Calumet & Chicago Canal & Dock Co. v. Conkling,* 273 Ill. 318, and *Mercantile Trust Co. v. Kastor,* 273 Ill. 332, which cases held that in general the powers of a corporation are limited by its charter, and where it enters into a contract ultra vires, such contract is void.

Plaintiff's charter authorized it "To manufacture, buy, sell and deal in drugs, chemicals, medicines and druggists' supplies, of every kind and description, drug sundries, sanitary appliances, fancy goods and other articles and things used in and pertaining to the druggists' supply business, and to do all acts and things reasonable and necessary for the conduct of such business or in connection therewith."

May 14, 1931, Mr. Samuel Halper asked his brother-in-law, one of the officers of the plaintiff corporation, for a loan of $1,500, offering to give to plaintiff his note for this amount; he was told that plaintiff could not use his note; Halper was associated with the defendant in the theatrical business and told plaintiff that he could get the defendant to sign the note and was told that plaintiff would let him have the money on defendant's note; this was communicated to the defendant who thereupon signed the note in question, wherein he agreed to pay to the order of the Royal Drug Company, 90 days after May 14, 1931, $1,500 with interest; defendant gave the note to Halper who delivered it to plaintiff and received from it $1,500. The note has not been paid.

The two cases cited by defendant have been the subject of much discussion. The opinions were delivered by a divided court. In the *Calumet* case the opinion recognizes that a loan made by a corporation may be valid although not expressly permitted by its charter, and that where the contract is within the implied scope

of its charter a party who has had the benefit of it cannot set up as a defense that the power was improperly exercised. In the *Mercantile Trust Co.* case the main issue involved was the right of the plaintiff corporation to engage in the business of making loans. The transaction now under consideration, was an isolated one and does not involve the question of loaning money as a business.

The defense of ultra vires is looked upon by many courts with disfavor, and in recent cases especially the rule has been frequently announced that the plea of ultra vires should not be allowed to prevail, whether interposed for or against a corporation, when it will not advance justice, but, on the contrary, will accomplish a legal wrong. R. C. L., vol. 7, page 676. See also Fletcher Cyc. Corp. (Perm. Ed.), vol. 3, sec. 1549. The decisions in this State have held, generally, to the same effect. *Darst v. Gale,* 83 Ill. 136; *Brown v. Scottish-American Mortgage Co.,* 110 Ill. 235; *Kadish v. Garden City Equitable Loan & Bldg. Ass'n,* 151 Ill. 531; *Eckman v. Chicago, B. & Q. R. Co.,* 169 Ill. 312; *American Credit Indemnity Co. v. Yamer,* 170 Ill. App. 350. In *Independent Order of Svithiod v. Ring Lodge No. 8,* 261 Ill. App. 289, this court in an extended opinion cited most of the cases in this State dealing with the subject of a contract ultra vires the power of a corporation. We there held that the loan of money by the corporation was an appropriate exercise of power for the attainment of the object for which the corporation was incorporated. In the recent case of *Benson Lumber Co. v. Thornton,* 185 Minn. 230, this subject was under discussion. In that case it was said:

"Neither plaintiff's charter nor the law under which it is incorporated contains any provision prohibiting plaintiff from loaning its money. There is not much

difference between loaning money and selling goods on credit, a power undoubtedly possessed by plaintiff. In either case, credit is extended. If plaintiff had money on hand, might it not deposit such money in a bank on time certificates so as to receive interest thereon, a loan of money to the bank? We are not prepared to say that a loan of money by plaintiff to an individual or a bank is clearly ultra vires.

"Contracts should not be held ultra vires unless clearly shown so to be.

"The present tendency is to restrict the defense of ultra vires in actions between private parties as far as possible, if not to deny it altogether, except in the case of contracts wholly executory. The general rule is that such contracts are unenforceable when wholly executory, but when executed on one side they are enforceable because the public policy of justice overbalances the public policy of keeping the corporation within the limits of its charter.

"An ultra vires contract fully performed on one side is enforceable either in favor of or against a corporation unless expressly prohibited by statute. In other words, if a corporation receives from an individual a substantial benefit under such a contract, it cannot repudiate the contract without restoring the benefit received. On the other hand, if an individual receives money or property from a corporation under such a contract, he or those claiming under him cannot repudiate the contract without restoring what was received. While this rule is generally said to be based on estoppel, it is equally sustained by the equity rule that one person or party shall not be permitted unjustly to enrich himself at the expense of another. 2 Morawetz, Private Corp. (2nd Ed.), sec. 689."

We have quoted rather fully as expressing our thought as to the case before us. As indicating the modern trend with reference to this question, it should

be noted that at the last session of the General Assembly of this State an act was passed, effective July 1, 1933, which in effect wipes out the defense of ultra vires in such a case as is now before us. Ch. 32, ¶ 8, Cahill's Illinois Statutes (1933).

Plaintiff's charter authorized it to do "all acts and things reasonable and necessary for the conduct of such business or in connection therewith." The burden of proving that the loan for which defendant's note was given was wholly outside of these authorized acts was upon the defendant. *Chicago Pneumatic Tool Co. v. Johns Mfg. Co.*, 101 Ill. App. 349; *Talmadge v. Clewiston Iron Co.*, 252 Ill. App. 508; Fletcher's Cyc. Corp., vol. 2, sec. 811. Halper and defendant may have had business relations with plaintiff which would warrant the loan. When a question arises as to whether a particular act or contract is in excess of the powers of a corporation, and there might be circumstances under which it would be authorized, it will be presumed to have been authorized unless the contrary appears, the burden of showing the contrary being upon the one who sets up the want of power. Defendant rested his case upon the language of plaintiff's charter. We must therefore conclude that the defense of ultra vires has failed of proof.

The judgment of the trial court will be reversed and the order vacating the judgment will be set aside, and the judgment entered against defendant on June 27, 1932, for $1,757.50 is confirmed.

*Judgment confirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.