Thomas R. Warner et al., Appellees, v. Monroe A. Munson et al., Defendants. Monroe A. Munson and Anna Marie Munson, Appellants.

## Gen. No. 37,754.

Heard in the second division of this court for the first district at the October term, 1934. Opinion filed June 13, 1935.

THEODORE JOHNSON, of Chicago, for appellants.

CHESTER E. CLEVELAND, of Chicago, for appellees.

Mr. Presiding Justice Friend delivered the opinion of the court.

Thomas R. Warner, Thomas Leroy Warner and Chicago Title & Trust Co., as trustee, filed a bill in the circuit court to foreclose a trust deed on real estate in Cook county, given to secure a promissory note for $30,000 made by defendants Monroe A. Munson and Anna Marie Munson, as mortgagors. The cause was put at issue and referred to a master, who recommended a decree of foreclosure. Exceptions to the master's report were overruled by the court and a decree of foreclosure and sale was entered, from which defendants appealed.

There is substantially no dispute as to the facts which disclose that on December 13, 1930, defendants made and delivered their note for $30,000, payable to ''bearer'' three years after date thereof, together with interest thereon at the rate of seven per cent per annum, payable semiannually, and secured by their trust deed of even date, conveying to Chicago Title & Trust Co., as trustee, the property herein foreclosed. The loan was negotiated by one Byron E. Day, who paid to defendants the face value of the note and shortly thereafter transferred the note and trust deed to one Crowder. On December 29, 1930, Warner Construction Company, a corporation, purchased the note and trust deed from Crowder, as a temporary investment, with surplus funds, for which it had no immediate need, earned and accumulated by the company in the conduct of its business.

Thereafter, May 1, 1933, before the filing of the bill of complaint herein, Warner Construction Company, pursuant to a resolution of its directors, and with the approval of its stockholders, sold the note and trust deed for a valuable consideration to Thomas R. Warner and Thomas Leroy Warner, on whose behalf the bill to foreclose was filed. The charter of the Warner

Construction Co. was not introduced in evidence, but the record discloses that it has for some 50 years carried on and conducted a business of building and general contracting. The corporation is not a party to this proceeding, and had no dealings with defendants until July, 1931, when the first instalment interest payment was made.

For reversal of the decree defendants rely upon two principles of law, viz.: (1) That the making of the loan or purchase of the note and mortgage by Warner Construction Co. was ultra vires and void; and (2), since the defense of ultra vires could have been interposed to any action brought upon the note and mortgage by the corporation, it is equally available in this proceeding against the plaintiffs Warner. Defendants rest their case mainly on the decisions in *Calumet & Chicago Canal & Dock Co. v. Conkling,* 273 Ill. 318, and *Mercantile Trust Co. v. Kastor,* 273 Ill. 332. These cases, in which opinions were delivered by divided courts, have been the subject of considerable discussion, and are frequently cited. They hold in general that the powers of a corporation are limited by its charter, and where it enters into a contract, ultra vires, such contract is void. In the *Calumet* case, the court recognizes that a loan made by a corporation may be valid although not expressly authorized by its charter, and that where the contract is within the implied scope of its charter a party who has had the benefit of it cannot interpose the defense that the power was improperly exercised. The question of a corporation lending idle funds acquired in its authorized business was not considered by the court, because the company had never engaged in business and therefore had no idle funds to lend. In the *Mercantile Trust Co.* case, the principal issue involved was the right of the plaintiff corporation to engage in the business of making loans. The transaction now under consideration does not involve the question of lending

money as a business, but has to do with an isolated investment.

The subject under discussion was fully considered in *Independent Order of Svithiod v. Ring Lodge No. 8,* 261 Ill. App. 289, wherein the opinion reviews most of the cases cited in this State, including those cited by defendants. It was there held that the loan of money by a fraternal beneficiary association to a subordinate lodge for the purpose of enabling the latter to construct a lodge hall was an appropriate exercise of power for the attainment of the object for which it was organized. On p. 306, quoting from Fletcher's Cyc. of Corporations, vol. 3, sec. 1619, p. 2701, the court states:

"The better opinion is that where the charter of a corporation or some other statute prohibits it from lending money on certain kinds of security, but does not declare that prohibited securities taken by it shall be void, they are not void, and may be enforced by it. The taking of such security is a misuser of the powers conferred upon the corporation by its charter, for which the state may enforce a forfeiture, but the misuser cannot be set up by the borrower to prevent the corporation from enforcing the security."

More recently this court had occasion to consider the same subject in *Royal Drug Co. v. Levin,* 273 Ill. App. 231. In that case the drug corporation's charter authorized it, among other things, to do all acts reasonable and necessary for the conduct of its business or in connection therewith. Liability on a note payable to the corporation was sought to be defeated on the ground of ultra vires. The court said, at pp. 234, 235:

"The defense of ultra vires is looked upon by many courts with disfavor, and in recent cases especially the rule has been frequently announced that the plea of ultra vires should not be allowed to prevail, whether interposed for or against a corporation, when it will not advance justice, but, on the contrary, will accom-

plish a legal wrong. R. C. L., vol. 7, page 676. See also Fletcher Cyc. Corp. (Perm. Ed.), vol. 3, sec. 1549. The decisions in this State have held, generally, to the same effect. *Darst v. Gale,* 83 Ill. 136; *Brown v. Scottish-American Mortgage Co.,* 110 Ill. 235; *Kadish v. Garden City Equitable Loan & Bldg. Ass'n,* 151 Ill. 531; *Eckman v. Chicago, B. & Q. R. Co.,* 169 Ill. 312; *American Credit Indemnity Co. v. Yamer,* 170 Ill. App. 350. In *Independent Order of Svithiod v. Ring Lodge No. 8,* 261 Ill. App. 289, this court in an extended opinion cited most of the cases in this State dealing with the subject of a contract ultra vires the power of a corporation. We there held that the loan of money by the corporation was an appropriate exercise of power for the attainment of the object for which the corporation was incorporated."

In the latter case we quoted rather extensively from the opinion in *Benson Lumber Co. v. Thornton,* 185 Minn. 230, where the subject of ultra vires was likewise under discussion, and, because the principles there enunciated are in keeping with the modern trend of authorities not only in this State but elsewhere, the pertinent part of the opinion is again quoted at length as follows:

"Neither plaintiff's charter nor the law under which it is incorporated contains any provision prohibiting plaintiff from loaning its money. There is not much difference between loaning money and selling goods on credit, a power undoubtedly possessed by plaintiff. In either case, credit is extended. If plaintiff had money on hand, might it not deposit such money in a bank on time certificates so as to receive interest thereon, a loan of money to the bank? We are not prepared to say that a loan of money by plaintiff to an individual or a bank is clearly ultra vires.

"Contracts should not be held ultra vires unless clearly shown so to be. . . .

"The present tendency is to restrict the defense of ultra vires in actions between private parties as far as possible, if not to deny it altogether, except in the case of contracts wholly executory. The general rule is that such contracts are unenforceable when wholly executory, but when executed on one side they are enforceable because the public policy of justice overbalances the public policy of keeping the corporation within the limits of its charter. . . .

"An ultra vires contract fully performed on one side is enforceable either in favor of or against a corporation unless expressly prohibited by statute. In other words, if a corporation receives from an individual a substantial benefit under such a contract, it cannot repudiate the contract without restoring the benefit received. On the other hand, if an individual receives money or property from a corporation under such a contract, he or those claiming under him cannot repudiate the contract without restoring what was received. While this rule is generally said to be based on estoppel, it is equally sustained by the equity rule that one person or party shall not be permitted unjustly to enrich himself at the expense of another. 2 Morawetz, Private Corp. (2nd Ed.), sec. 689."

The rule laid down in Fletcher's Cyc. of Corporations, vol. 2, sec. 948, p. 1900, which was quoted with approval in the *Svithiod* and *Royal Drug Co.* cases, *supra*, is as follows:

"Whenever a corporation has the right to hold funds for which there is no present use, it may loan them, in the absence of express restriction, in order to invest them, instead of allowing them to remain idle and unproductive. This is true of insurance companies, annuity companies, benevolent associations, manufacturing companies, railroad companies, etc., having surplus funds."

It was said in the *Svithiod* case, *supra,* that the doctrine of the foregoing text is sustained by numerous authorities, among which are *Farmers Loan & Trust Co. v. Clowes,* 3 N. Y. 470; *Farmers Loan & Trust Co. v. Perry,* 3 Sanford Ch. (N. Y.) 339; *Western Boatmen's Benev. Ass'n v. Kribben,* 48 Mo. 37.

In vol. 3, sec. 1619, p. 2701, Fletcher's Cyc. of Corporations, the author discusses at length the effect of illegal or prohibited contracts, pointing out that there is a conflict in the decisions as to the effect of a charter or statutory prohibition against discounting or lending money on securities, and says that if the statute expressly declares that the securities taken in violation of the prohibition shall be void, the same may not be enforced; that some courts have gone further and held that the mere fact of prohibition renders them void and unenforceable, "but this construction is not supported by the weight of authority."

Defendants cite the recent case of *Knass v. Madison & Kedzie State Bank,* 354 Ill. 554, and *National Home Building & Loan Ass'n v. Home Savings Bank,* 181 Ill. 35, to support their contention that the purchase of the note and trust deed was ultra vires the powers of the corporation, and therefore became null and void. In the former decision, complainant had purchased from the bank real estate securities, in the form of first mortgage gold bonds, placed by it on the market, and in order to induce their purchase had delivered a bill of sale for the bonds containing an agreement on the part of the bank to repurchase the same at any time after one year at one per cent discount, plus accrued interest. One of the questions presented for consideration was whether such repurchase agreement was ultra vires the power of the bank and against the public policy of the State. The court declared the agreement unenforceable, principally upon the ground of public policy, holding that the

repurchase agreement assumed or guaranteed the payment of the evidence of indebtedness of another corporation, contrary to the express provisions of its charter, in derogation of the protection of the rights of bank depositors. It was said (p. 568), ''As it cannot be doubted that such an agreement could jeopardize or impair the deposits or trust funds of the bank, such contract, because of its inherent danger to deposits and trust funds and because it is contrary to the public policy of the State, as evidenced by the legislative expression in section 4 of the statute quoted, is null and void.'' (An act for the protection of bank depositors, approved June 4, 1879, Cahill's St. ch. 38, ¶ 38 *et seq.;* Smith's Statutes, 1931, ch. 38, ¶ 64, sec. 4.)

In *National Home Building & Loan Ass'n v. Home Savings Bank,* 181 Ill. 35, the plaintiff corporation, by an exchange of properties, acquired a parcel of real estate and assumed an incumbrance thereon. The court held that no deficiency could be rendered against the corporation on foreclosure of the mortgage, because its purpose under the charter conferred upon it was to raise funds to be lent to its members upon the security of its stock and unincumbered real estate, and that the business of trading in real estate or acquiring same, except as incidental to its legitimate business, was wholly foreign to the purpose for which it had been created and to the powers conferred upon it by the State.

Another case relied upon by defendants is *Leigh v. American Brake-Beam Co.,* 205 Ill. 147. One of the officials of the corporation had lent defendant certain sums of money to be used in a private enterprise. The company lending the money was organized to manufacture and sell or otherwise dispose of brake beams and other appliances, and the court said that the business of lending money was not included in the powers

granted to the corporation and that no action would lie upon the contract made in violation of the law.

The facts of these cases are not analogous to the circumstances disclosed by this record. Defendants take no half-way position, and would have this court hold that when a corporation acquires negotiable paper, payable to bearer, after the same has been put into circulation, the acquisition thereof operates to destroy the negotiable instrument, even to the extent that the corporation cannot pass title to it by delivery to some natural person. The authorities hereinbefore cited do not justify any such conclusion. The *Svithiod* and *Royal Drug Co.* cases, *supra,* and the decisions cited and referred to therein, as well as text writers and authorities in other States, are tending to uphold and enforce partly executed contracts, fairly made, where "the public policy of justice overbalances the public policy of keeping the corporation within the limits of its charter," unless expressly prohibited by statute. Defendants received the face value of the note, and it would be a denial of justice and the accomplishment of a legal wrong to hold that plaintiffs, who acquired the note and trust deed from the corporation for a valuable consideration, be precluded from foreclosing the trust deed and permit defendants to retain the amount of the loan and destroy the value of the securities in plaintiffs' hands.

During the pendency of this appeal defendants asked leave to offer in evidence as an additional exhibit a copy of the charter of Warner Construction Co. This motion was reserved to the hearing. In view of the conclusion reached, it would serve no useful purpose to allow the motion. It is therefore denied and the decree of the circuit court is affirmed.

*Affirmed.*

SCANLAN and SULLIVAN, JJ., concur.