ADOLPH A. JANIS *et al.*, Respondents, v. KATE ROENTGEN AND CUNO J. ROENTGEN; KATE ROENTGEN, Appellant.

St. Louis Court of Appeals, December 27, 1892.

Contract: IMPLIED AGREEMENT OR UNDERSTANDING TO COMPOUND A FELONY. A contract to pay money upon an agreement or understanding for the compounding of a felony is invalid, whether such agreement or understanding is express or implied.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

REVERSED AND REMANDED.

*Henry Boemler*, for appellant.

*Rassieur & Schnurmacher*, for respondents.

BIGGS, J.—There was a judgment in the circuit court against both defendants for the sum of $1,384.50. Kate Roentgen alone has appealed, and claims that the judgment as to her is unsupported by the evidence. Upon this assignment only is a reversal asked.

The action was on a promissory note executed by Kate Roentgen jointly with her son, Cuno J. Roentgen. The separate answer of the mother was to the effect, that her son had been employed by the plaintiffs, who were wholesale dry-goods merchants; that they charged him with embezzling certain goods belonging to them, and that they agreed with her and her son that, if she would execute the note in suit, they

would not prosecute her son criminally for such embezzlement; that the note was executed in pursuance of this agreement; and that this was the only consideration of the note. In other words the defense is made, that the consideration of the note was an agreement to compound a felony, whereby it is void and not enforceable in an action in a court of justice.

Both defendants, and the wife of Cuno, who was present at the time of the settlement and with whom the plaintiffs first opened negotiations for a settlement, testified positively that $1,500 in cash was paid to the plaintiffs by Kate Roentgen, and that the note was signed by her and Cuno upon the express agreement, that the latter would *not be prosecuted*, and that his crime should be *concealed*. The evidence of both parties was to the effect that, at the time the settlement was made, Cuno admitted or at least did not deny his guilt; that there was no prosecution, and that the crime *had been concealed* until about the time of the institution of this suit, which was about one year after the settlement.

Virginius O. Saunders, one of the plaintiffs, testified that he was present at the time the settlement was made, and that there was no agreement that Cuno would not be prosecuted; that there was nothing said about it. We extract the following from his cross-examination: "*Q.* Mr. Saunders, you say you well knew what the law on that subject was, did you? *A.* Yes, sir; I know what the law is in regard to compounding felony.

"*Q.* You knew that he had taken these goods, did you? *A.* Yes, sir.

"*Q.* You even went up to the Four Courts to get a detective to investigate this matter, did you not? *A.* To get a detective to catch him; yes, sir.

"*Q.* You knew you could have prosecuted him for that, didn't you? *A.* I suppose I could; yes, sir.

"*Q.* You did not prosecute him for that? *A.* No, sir.

"*Q.* But you took money for it, and you have kept this matter quiet ever since, haven't you? *A.* Well, certainly.

"*Q.* Now I am asking you, and you say you know the law, if you say you did not compromise a felony, what do you call it? *A.* I don't know what you would call it, I would not call it compounding a felony ; I am not the judge in the case, *but I say, if a young man shows a disposition to right a wrong—*" Here the sentence was broken off by interruption of counsel.

Adolph A, Janis, the other plaintiff, also testified that the money was paid, and the note was given without any agreement on his part or that of his partner not to prosecute the defendant Cuno for the embezzlement. On his examination in chief, the following question was asked the witness: "*Q.* After the $1,500 was paid, and before the note was signed, what conversation did you and your partner and Roentgen and his mother have, if any? *A.* *I congratulated Cuno and Mrs. Roentgen on paying this money, and on settling the matter that was necessarily very disagreeable to us all.*"

On cross-examination he was asked the following questions: "*Q.* Didn't you tell me why Mrs. Roentgen signed that note? *A.* I did not. I said I supposed the reason she signed it was because he was her son, and she wanted to help him.

"*Q.* And to keep him out of the penitentiary? *A.* I never said a word about the penitentiary; never used any such language.

"*Q.* Why, then, did you congratulate Cuno after the money was paid and the note was signed? *A.*

*Because it was a settlement of an ugly affair for him, and he had a chance of leading a new life and making a man of himself."*

When the entire evidence is considered, we are at a loss to know how the trial court arrived at the conclusion that there was not at least an *implied* agreement or understanding that, if the defendants would execute the note, Cuno would not be prosecuted, and that his crime would be concealed. The finding can only be accounted for upon the theory that the court was of the opinion that there must have been an *express* agreement or understanding to that effect, which we do not understand to be the law in this state. In the case of *Sumner v. Summers,* 54 Mo. 345, the circuit court instructed the jury that, if "the obligation sued on was executed by the defendants upon an agreement or understanding, either express or *implied*," etc., that the prosecution against one of the defendants would be abandoned, etc., then the obligation was void, etc. In approval of this instruction, the supreme court said in its opinion: "It is the agreement, either express or *implied*, to abstain from prosecution, or to dismiss a prosecution already begun, which taints the whole transaction and avoids the contract." In the more recent case of *McCoy v. Green,* 83 Mo. 626, the supreme court expressly reaffirmed the principle. So, in the case of *Baker v. Farris,* 61 Mo. 389, it was decided that "a note given for the purpose of *defeating the execution of the criminal law, or for compounding a felony,* is against public policy and void." Our statute on the subject of compounding felonies (Revised Statutes, 1889, sec. 3681) provides: "Every person having a knowledge of the actual commission of any offense punishable by death, or by imprisonment in the penitentiary, who shall take any money or property of another or any gratuity or reward, or any *promise,*

*undertaking or engagement* therefor upon agreement or undertaking, express or *implied*, to compound or *conceal* such crime, or to abstain from any prosecution therefor, or withhold any evidence thereof, shall, upon conviction, be punished by imprisonment in the penitentiary for a term not exceeding five years.''

That the defendants' own evidence established at least that there was an *implied* agreement or understanding that, if the note was given, Cuno would not be prosecuted, and that his crime would be concealed by plaintiffs, does not seem to us to admit of serious controversy or doubt. They admit that they knew at the time the note was given that Cuno was guilty of embezzling goods belonging to them of the value of about $3,000; that they knew that he was subject to a prosecution for felony; that they did not prosecute him, but *concealed* his crime until this suit was begun; and Mr. Janis admits that, after the money had been paid and the note executed, he congratulated Cuno *"because it was a settlement of an ugly affair for him, and he had a chance of leading a new life, and making a man of himself;"* and if Mr. Saunders had not been interrupted by counsel it is quite evident that he would have thrown more light, if any more were needed, on the real character of the transaction. The congratulations extended by Mr. Janis to Cuno can only be accounted for upon the ground that, in making the settlement, the latter had not only purchased immunity from prosecution of his crime, but that his offense against the law and society should thereby be concealed. When to this is added the fact that Mrs. Roentgen would not in reason have paid $1,500 in money, and involved herself in debt, without some assurance that her son would not be prosecuted, and when the further fact is considered that Mrs. Roentgen, Cuno and his wife, all swear that there *was* an agreement not to

prosecute, and that the offense should be concealed, we are forced to the conclusion, that, as the finding is so strongly opposed to all the reasonable probabilities it must, when the law governing such a defense is considered, have been the result of a mistake. *Mauerman v. Railroad*, 41 Mo. App. 348. It was said in the leading English case on this subject (*Collins v. Blantern*, 2 Wilson, 341, 349): "The manner of the transaction was to gild over and conceal the truth, and whenever courts of law see such attempts made to conceal such wicked deeds they will brush away the cobweb varnish, and show the transactions in their true light."

The judgment of the circuit court will be reversed, and the cause remanded.